NUMBER 13-03-322-CV

 

                         COURT OF APPEALS

 

                     THIRTEENTH
DISTRICT OF TEXAS

 

                         CORPUS
CHRISTI - EDINBURG 

 

JOSE M.
LOPEZ AND BLANCA

ALVAREZ,
INDIVIDUALLY AND

AS NEXT
FRIENDS OF VIANCA

LOPEZ
AND KASSANDRA LOPEZ,

MINORS,
AND EVA ALVAREZ,                                               
Appellants,

 

                                                             v.

 

JUAN
PABLO SANDOVAL,                                                              Appellee.

 

    On appeal from
the 103rd District Court of Cameron County, Texas.

 

 

                               MEMORANDUM
OPINION

 

          Before
Chief Justice Valdez and Justices Yañez and Castillo

                            Memorandum
Opinion by Justice Yañez

 








Appellants, Jose M. Lopez (ALopez@) and Blanca Alvarez, individually and as next
friends of their minor children, Vianca and Kassandra Lopez, and Eva Alvarez
(Blanca=s sister), sued appellee, Juan Pablo Sandoval, for
injuries appellants allegedly sustained on March 22, 1998, when appellee=s vehicle Arear-ended@ the truck in which they were riding.  After the close of evidence presented to a
jury, the trial court granted appellants a directed verdict on liability.  The only issue remaining for the jury was the
amount of damages, if any, sustained by appellants.  The jury returned a verdict of zero damages
and the trial court issued a take-nothing judgment against appellants.  By three issues, appellants contend (1) the
trial court erred in denying their motion to disqualify Roerig, Oliveira &
Fisher (Athe Roerig firm@), the law firm representing appellee, based on the
firm=s prior representation of Lopez; (2) the trial court
erred in allowing appellee=s counsel to impeach Lopez=s credibility by questioning him about the prior
matter; and (3) the evidence is legally and factually insufficient to support
the jury=s award of zero damages.  We affirm. 

                                                   I.  DISQUALIFICATION ISSUE

In their first issue, appellants contend the trial
court erred in denying their motion to disqualify appellee=s law firm, the Roerig firm, based on the firm=s prior representation of Lopez in a 1996
matter.  








During the cross-examination of Lopez, appellee=s counsel (an attorney with the Roerig firm)
attempted to impeach Lopez by establishing his involvement in a 1996 accident,
which he had failed to disclose in response to discovery requests.[1]  Following the cross-examination, it was
revealed that the Roerig firm had represented Lopez as a defendant in a lawsuit
arising out of the 1996 accident. 
Appellants moved for a mistrial and to disqualify the Roerig firm from
representing appellee in the present matter. 
The trial court denied the motions.     


                                                         A.  Standard of Review 

We review a trial court=s ruling on a motion to disqualify under an abuse of
discretion standard.[2]  We will reverse the trial court's decision
only where the trial court acted without reference to any guiding rules or
principles, or acted in an arbitrary or unreasonable manner.[3]


                                                                Applicable
Law 

ADisqualification is a severe remedy.@[4]  AIt can result in immediate and palpable harm,
disrupt trial court proceedings, and deprive a party of the right to have
counsel of choice.@[5]  AIn considering a motion to disqualify, the trial
court must strictly adhere to an exacting standard to discourage a party from
using the motion as a dilatory trial tactic.@[6] 








When contemplating whether disqualification of
counsel is proper, the court must determine whether the matters embraced within
the pending suit are substantially related to the factual matters
involved in the previous suit.[7]  The severity of the remedy of
disqualification requires the movant to establish a preponderance of the facts
indicating a substantial relation between the two representations.[8]  The moving party must prove the existence of
a prior attorney-client relationship in which the factual matters involved were
so related to the facts in the pending litigation that it creates a genuine
threat that confidences revealed to his former counsel will be divulged to his
present adversary.[9]  Sustaining this burden requires evidence of
specific similarities capable of being recited in the disqualification order.[10]  If this burden can be met, the moving
party is entitled to a conclusive presumption that confidences and secrets were
imparted to the former attorney.[11]

                                                                   B.  Analysis








The threshold issue is whether the matters involving
the prior and current representations are Asubstantially related.@[12]  Appellants
argue that pursuant to the Roerig firm=s representation of Lopez in 1996, the firm would
have had access to medical records reflecting injuries sustained by Lopez as a
result of the 1996 accident.  According
to appellants, by pleading the affirmative defense of pre-existing condition in
the present case, appellee Acreated a direct factual relationship@ between injuries sustained by Lopez in the 1996
accident and injuries he sustained in the 1998 accident at issue in the present
case.  

Appellee responds that the information regarding
Lopez=s 1996 automobile accident was not obtained from the
Roerig firm=s prior representation of Lopez, but from the
Mission Police Department.  Appellee
contends that appellants failed to present any evidence that Lopez discussed
his physical condition, either prior to or after the 1996 accident, with the
Roerig firm prior to termination of the case. 
Appellee contends that appellants failed to establish that the matters
involved in the 1996 representation are Asubstantially related@ to
the matters involved in the present case. 
We agree.                  

The record contains a letter issued by the trial
court explaining its ruling.  The letter
states, in relevant part:

To satisfy the substantial relationship test as a
basis for disqualification, a movant must prove that the facts of the previous
representation are so related to the facts in a pending litigation that a
genuine threat exists that confidences revealed to former counsel will be
divulged to a present adversary.  Mere
allegations of unethical conduct or evidence showing a remote possibility of a
violation of the Disciplinary Rules will not suffice under this standard.  Furthermore, the movant may not rely upon
conclusory statements but must provide the trial court with sufficient
information so that it can engage in a painstaking analysis of the facts.  While a movant need not divulge any
confidences, he must delineate with specificity the subject matter, issues, and
causes of actions presented in the former representation.  Sustaining this burden requires evidence of
specific similarities capable of being recited in the disqualification order.

 








The Court must then look at the two cases in
question to see if they were so related that it creates a genuine threat that
confidences revealed to the former counsel will be divulged to the present
adversary.  The known facts of the 1996
case are that the defendant was involved in an automobile accident and, as a
result thereof, he was sued by a party unrelated to this case.  The Roerig firm represented plaintiff Lopez
as a defendant in the 1996 accident case after being employed to do so by
plaintiff Lopez= [sic] insurance carrier at the time.  Although there is no specific evidence to
that effect, the Court presumes that the nature of the lawsuit was for personal
injuries and/or property damage to the party filing the lawsuit.  No specifics were provided to the Court
regarding the nature of the issues in the case. 
The Court can reasonably conclude from the evidence that the opposing
party filed a negligence case alleging that the plaintiff Lopez= [sic] negligence proximately caused damages
to him in the 1996 case.  The Court is
sufficiently familiar with the trial of automobile accident cases to know that
the defense lawyer would need to inquire of the client about the nature of the
1996 accident to determine its defenses to a negligence claim and to determine
if the opposing party=s driving behavior gave rise to a comparative
negligence claim.  Additionally,
depending on the nature of damages claim by the opposing party, the defense
counsel would be obliged to inquire of its client about relevant factors such
as the severity of the accident, the damages to the vehicle, any conversation or
admissions made by the opposing party in the aftermath of the accident and
factors relevant to the presumed police investigation at the scene.  There is no suggestion in the evidence of
this case that the Roerig firm brought any form of cross action for any damages
which the plaintiff Lopez may have suffered in the 1996 accident.  It would be unusual that the firm hired by
the insurance company to represent a defendant would file a cross action for
damages in such a case or that the law firm might have been involved in
confidential representations made to a different attorney employed for the
purpose of pursuing a cross action. 
Without such evidence, the Court must necessarily find that there is no
evidence of such and presume that the attorneys only inquired into things
relevant to the defense.  The Court finds
that the plaintiff Lopez= [sic] physical condition, specifically, any
neck injuries either pre-existing in the 1996 accident or caused by the 1996 accident
would not be typically relevant information that the attorney would discuss
with a defendant in such a case.  While
the defendant is not required to divulge the confidences discussed with the
lawyer, he is required to make a general showing that some confidences which
would relate to the 1998 case [the present case] were discussed.  Had such discussions occurred, the plaintiff
Lopez could have informed this Court generally that in preparing for trial, he
discussed with his attorneys his physical condition as to either the 1991
accident or the 1996 accident or both. 
There is no testimony to the effect that such matters were
discussed.  

 








. . .  Since
the 1996 accident case was terminated in 1997, the year before the accident
involved in the case herein, the only potential relevant confidential
information which could have been provided to his then defense attorneys would
have been any information regarding his medical history either prior to the
1996 accident or subsequent to the 1996 accident up until the case was settled
in 1997.  Since there has been no
evidence to show that his own physical condition either prior to or after the
1996 accident was ever discussed with his lawyers prior to termination of the
case in 1997 and since it is not logical to assume that his then defense
attorneys would have had any reason to discuss his physical condition with him,
it does not appear to the Court that there is a substantial relationship
between the 1996 case and the 1998 case.

 

We have reviewed the
entire record.  Regarding the 1996
accident, Lopez testified as follows:  

Q
[Lopez=s counsel]: The >96
accident, the one I am talking about, the one that you said you could not
remember.  Did they [attorneys at the
Roerig firm] talk to you about the injuries that you sustained in that
accident?

 

A
[Lopez]: I mean, I can=t honestly remember what all went on, I know I just
went in there to talk to them, and yes, they might have.  I just don=t
remember exactly one way or the other.

                                                               .
. . .

 

Q:  And did you tell them when they represented
you about the accident that happened in >96, what happened in the accident?

 

A:  At that time to them?

 

Q:
Right, did you explain to the attorneys, Roerig Oliveira & Fisher?

 

A:
Yes.

 

Q:
Did you tell them what happened in the accident?

 

A:
Yes, I had to go in several times to talk to them.

 

Q:
How many times?

 

A:
I am going to say about two or three times. 
I mean, I don=t remember.

 

Q:
Did you sign any papers when you went over there those two or three times?

 

A:
I know I signed paperwork in regards to that >96
accident.

 

Q:
Okay.  Like do you remember what kind of
documents they were?

 

A:
I don=t recall.

 

Q:
Okay.  And you said you don=t recall telling them about the injuries that you
suffered as  result of the 1996 accident?

 

A:
Maybe I did, I don=t know.  I
mean it=sB 








Q:
Okay.  And did you pay for the
representation that Roerig, Oliveira & FisherB did
you pay them to represent you or did the insurance company pay them to
represent you?

 

A:
No, I think the insurance company was the one that did all that. 

 

As noted, appellants
had the burden of establishing that the matters are  Asubstantially related.@[13]  We conclude
that appellants failed to bring forth Aevidence of specific similarities capable of being
recited in the disqualification order.@[14]  We hold that
on the evidence presented, based on the Coker standard, the trial court
did not abuse its discretion in concluding that no substantial relationship
existed between the former and current representations.[15]  Accordingly, we hold the trial court did not
err in denying appellants= motion to disqualify.  We overrule appellants= first issue.

                                                Dissenting
Opinion








The dissent concludes that the trial court abused
its discretion in denying appellants= motion because appellants established that the
matters involving the prior and current representations are Asubstantially related.@  The dissent finds the matters are Asubstantially related@
because any injuries sustained by Lopez in prior accidents, including the 1996
accident, are relevant to appellee=s defense of pre-existing condition.  In support, the dissent points to Lopez=s testimony that he struck his head in the 1996
accident and that he recalls speaking to his prior attorneys several times to
explain what happened during the 1996 accident. 
The dissent notes Lopez=s testimony that he may have mentioned his injuries
to the attorneys.  The dissent finds that
the Aassumptions@ made by the trial court that Lopez did not provide
any information pertaining to his injuries are not supported by the
evidence.  The dissent concludes that the
appellants satisfied the test set out in Coker by establishing
that the two matters are substantially related.[16]   

We are unpersuaded that the evidence cited by the
dissent is sufficient to meet the burden outlined in Coker of
establishing that the matters are Asubstantially related.@[17]  We   conclude that appellants failed to prove the
existence of a prior attorney-client relationship in which the factual matters
involved were so related to the facts in the pending litigation that it creates
a genuine threat that confidences revealed to Lopez=s former counsel will be divulged to his present
adversary.[18]  We conclude appellants failed to meet their
burden and that the trial court did not err in denying appellants= motion to disqualify.        

                                                  II.  IMPEACHMENT EVIDENCE








By their second issue,
appellants contend the trial court abused its discretion by allowing appellee=s counsel to impeach Lopez=s credibility by questioning him about the 1996
accident.  Specifically, on
cross-examination, appellee=s counsel questioned Lopez about the 1996 accident
after noting that he testified on direct examination and in his deposition that
the only other accident he was involved in occurred in 1991. 

Evidentiary rulings are
reviewed for an abuse of discretion.[19]  This Court must review the entire record
to determine whether the whole case turned on the evidence about which
appellants complain.[20]
 To obtain reversal on the basis of trial
error, a party must establish that the error was Aharmful.@[21]  A trial
error requires reversal (i.e., is Aharmful@) if it (1) probably caused the rendition of an
improper judgment; or (2) probably prevented the appellant from properly presenting
the case to the court of appeals.[22]








Here, appellants complain
generally that allowing the jury to hear the impeachment evidence resulted in Atrial by ambush.@  We disagree. 
Appellants have failed to establish that the whole case turned on the
impeachment evidence about which they complain. 
In light of the whole case, even if we were to conclude that the trial
court erred in allowing the impeachment testimony, we could not say that the
decision to allow the impeachment evidence caused the rendition of an improper
judgment in this case.[23]  We overrule appellants= second issue. 

                                           III.  SUFFICIENCY OF THE EVIDENCE

In their third issue,
appellants challenge the legal and factual sufficiency[24]
of the evidence supporting the jury=s award of zero damages. 








When a party attacks the
legal sufficiency of an adverse finding on which it had the burden of proof
(damages), it must demonstrate on appeal that the evidence establishes, as a
matter of law, all vital facts in support of the issue.[25]  AIn reviewing a >matter of law= challenge, the reviewing court must first examine
the record for evidence that supports the finding, while ignoring all evidence
to the contrary.@[26]  AIf there is no evidence to support the finding, the
reviewing court will then examine the entire record to determine if the
contrary position is established as a matter of law.@[27]  The issue
will be sustained Aonly if the contrary position is conclusively
established.@[28]  In addition,
when a party attacks the factual sufficiency of a finding on which it had the
burden of proof, it must demonstrate that the jury's answer is against the
great weight and preponderance of the evidence.[29]  In reviewing such a challenge, a court of
appeals Amust consider and weigh all of the evidence, and can
set aside a verdict only if the evidence is so weak or if the finding is so
against the great weight and preponderance of the evidence that it is clearly
wrong and unjust.@[30]

Appellants contend that they
proved their respective medical expenses as a matter of law because (1) the
trial court granted their motion for directed verdict on liability; and (2)
they filed medical records and medical bills, along with affidavits proving
their reasonableness and necessity pursuant to chapter 18 of the civil practice
and remedies code,[31]
and appellee failed to file counter-affidavits. 


Section 18.001(b) touches
upon three elements of proving damages for past medical expenses: (1) the
amount of the charges for medical services, (2) the reasonableness of the
charges, and (3) the necessity of the charges.[32]  However, evidence presented in accordance
with the statute does not conclusively establish the amount of damages nor does
it establish a causal nexus between the accident and the medical expenses.[33]  A plaintiff may recover only for reasonable
and necessary medical expenses specifically shown to result from treatment made
necessary by the negligent acts or omissions of the defendant, where such a
differentiation is possible.[34]








Appellants contend Ait was proven as a matter of law that [they] were
entitled to recover their respective medical expenses@ because the trial court granted a directed verdict Aholding that Appellee was liable for causing the
incident in question and Appellants= injuries and damages arising therefrom.@  Appellants
cite Sloan v. Molandes, 32 S.W.3d 745, 752 (Tex. App.BBeaumont 2000, no pet.) (A[c]ompliance with the statute [chapter 18] does not
establish that the amount of the damages shown to be reasonable and necessary
was caused by the defendant's negligence and therefore does not establish the
plaintiff's entitlement to those damages as a matter of law@), and attempt to distinguish it by asserting that
unlike Sloan, the trial court in the present case made a finding that
the Aamount of the damages shown to be reasonable and
necessary was caused by the defendant=s
negligence.@ (emphasis added). 
The record, however, does not support appellants= assertion. 
The record reflects that the trial court granted a directed verdict only
on the issue of liability; the issue of damages was decided by the jury.








Examining the record for
evidence supporting the jury=s finding of zero damages,[35]
the jury heard evidence that (1) following the 1998 accident at issue here,
Lopez sought treatment from Dr. Pechero, complaining of neck and shoulder pain;
(2)  Lopez was involved in two previous
accidents, one of which (in 1991) caused him to seek treatment from Dr. Pechero
for neck and shoulder injuries; (3) Lopez testified that he had not seen any
doctor during the past four years; (4) Dr. Pechero testified that following the
1991 accident, Lopez sought treatment for severe pain in his neck and
shoulders; and (5) at his deposition, Lopez testified that between his 1991
accident and his 1998 accident, his neck never stopped bothering him.  We conclude that the evidence is legally
sufficient to support the jury=s finding of zero damages.[36]  

Appellants also contend the
jury=s finding of zero damages is against the great
weight and preponderance of the evidence and is manifestly unjust.[37]  The jury heard the following evidence: (1)
Dr. Pechero testified that Lopez sustained a herniated disc as result of the
1998 accident; (2) Pechero also testified that Lopez was experiencing neck
pain; (3) Lopez testified that he suffered neck and shoulder pain as a result
of the 1998 accident; (4) Lopez testified that although he was involved in four
accidents over the last several years (including one following the 1998
accident), his injuries were caused only by the 1998 accident; (5) Lopez
testified as to lost wages and medical expenses in the amount of $3,900
incurred as a result of the accident; (6) Blanca Alvarez (Lopez=s wife) testified she sought treatment from Dr.
Pechero for injuries sustained as a result of the accident and incurred medical
expenses of approximately $2,400; (7) Blanca Alvarez also testified as to
approximately $800 in medical expenses to Dr. Pechero for examination of her
daughters; and (8) Eva Alvarez (Lopez=s sister-in-law) testified that she sought treatment
from Dr. Pechero for neck and back pain sustained as a result of the accident.








The jurors were charged to
observe the witnesses, evaluate their demeanor and the credibility of their
testimony and resolve inconsistencies in the evidence.[38]  In determining the sufficiency of the
evidence to support the jury's findings, the appellate court accepts, and will
not interfere with, the jury's resolution of any conflicts or inconsistencies
in the evidence.[39]  Considering all the evidence, we conclude
that the jury=s finding of zero damages is not against the great
weight and preponderance of the evidence and is not manifestly unjust.[40]

Accordingly, we  overrule appellants= third issue and affirm the trial court=s judgment.  

                                                              
                                                       

LINDA REYNA YAÑEZ,

Justice

 

 

 

Dissenting memorandum opinion by

Chief Justice Valdez.

 

Concurring memorandum opinion by

Justice Castillo.

 

Memorandum opinion delivered and filed

this the 23rd day of February, 2006.

  

   

 

 

 

 

 











[1]
Lopez had stated that he only
recalled being involved in one prior auto accident, in 1991.  





[2]
See Metro. Life Ins. Co.
v. Syntek Fin. Corp.,
881 S.W.2d 319, 321 (Tex. 1994); Spears v. Fourth Court of Appeals, 797
S.W.2d 654, 657 n.3 (Tex. 1990, orig. proceeding); City of Dallas v. Redbird
Dev. Corp., 143 S.W.3d 375, 387 (Tex. App.BDallas 2004, no pet.)     





[3]
See Metro. Life, 881 S.W.2d at 321.





[4]
In re Nitla S.A. de C.V., 92 S.W.3d 419, 422 (Tex. 2002)
(orig. proceeding) (quoting Spears, 797 S.W.2d at 656).  





[5]
Id.  





[6]
Id. 





[7]
NCNB Tex. Nat=l Bank v. Coker, 765 S.W.2d 398, 399-400 (Tex.
1989) (emphasis in original); Howard v. Tex. Dep=t of Human Serv., 791 S.W.2d 313, 315 (Tex. App.BCorpus Christi 1990, no writ). 





[8]
Coker, 765 S.W.2d at 400.





[9]
Id. 





[10]
Id. 





[11]
Id. (emphasis added); Howard,
791 S.W.2d at 315.   





[12]
Coker, 765 S.W.2d at 399-400.





[13]
See id. at 400.  





[14]
See id.  In Coker, the trial court=s disqualification order stated: AThe court further finds the subject
matter involved in both representations are similar enough for there to be an
appearance that the attorney-client confidences which could have been disclosed
by the defendant might be relevant to the law firm=s representation of the plaintiff
in this suit.@ 
Id.  In holding that the
trial court failed to apply the proper standard to the disqualification motion,
the supreme court noted:

 

The vagueness of the court's order indicates that the
substantial relation test was not used; had it been, the court should have been
able to state without difficulty the precise factors establishing a substantial
relationship between the two representations. To hold that the two
representations were "similar enough" to give an "appearance"
that confidences which could be disclosed "might be relevant" to the
representations falls short of the requisites of the established substantial
relation standard.

 

Id. 


  





[15]
See id. at 399-400; Metro. Life, 881
S.W.2d at 321.





[16]
See Coker, 765 S.W.2d at 400. 





[17]
See id.  
 





[18]
See id.  





[19]
E.I. du Pont de Nemours
& Co. v. Robinson,
923 S.W.2d 549, 558‑59 (Tex. 1997); Brownsville Pediatric Ass=n v. Reyes, 68 S.W.3d 184, 192 (Tex. App.BCorpus Christi 2002, no pet.).  





[20]
See Tex. R.
App. P. 44.1(a); Brownsville
Pediatric Ass=n, 68 S.W.3d at 192-93.   





[21]
See Tex. R.
App. P. 44.1(a);
Brownsville Pediatric Ass=n, 68 S.W.3d at 193 (citing  Owens‑Corning Fiberglas Corp. v.
Malone, 916 S.W.2d 551, 557 (Tex. App.BHouston [1st Dist.] 1996), aff'd, 972 S.W.2d 35, 41
(Tex. 1998)). 





[22]
Tex.
R. App. P. 44.1(a).  





[23]
See id.  





[24]
AUnlike legal sufficiency
challenges, factual sufficiency issues concede that the record presents
conflicting evidence on an issue.@  Ed Rachal Found.
v. D=Unger, 117 S.W.3d 348, 354 (Tex. App.BCorpus Christi 2003, pet. filed)
(en banc).





[25]
Dow Chem. Co. v. Francis, 46 S.W.3d 237, 241 (Tex. 2001).





[26]
Id.  





[27]
Id.  





[28]
Id. at 241‑42. 





[29]
See id. at 241. 





[30]
Id.





[31]
See Tex. Civ.
Prac. & Rem. Code Ann. ' 18.001 (Vernon 1997).





[32]
See id. ' 18.001(b); Walker v. Ricks,
101 S.W.3d 740, 747‑48 (Tex. App.BCorpus Christi 2003, no pet.); Barrajas v. VIA Metro.
Transit Auth., 945 S.W.2d 207, 209 (Tex. App.BSan Antonio 1997, no writ).





[33]
Walker, 101 S.W.3d at 748.





[34]
See Texarkana Mem=l Hosp., Inc. v. Murdock, 946 S.W.2d 836, 840 (Tex. 1997).

 





[35]
See Dow Chem., 46 S.W.3d at 241. 





[36]
See id.  





[37]
See id. 






[38]
Walker, 101 S.W.3d at 750.





[39]
Id.  





[40]
See Dow Chem., 46 S.W.3d at 241; Walker,
101 S.W.3d at 750.